Dear Mayor Pro Tem Snyder:
This office is in receipt of your request for an opinion of the Attorney General in regard to ordinances for issuance of building permits. You relate that the ordinances in question are relative to providing flood damage prevention, but you find they have been used for the last few months as a basis to issue or deny building permits by the Town of Sibley for a nominal fee arbitrarily set by the Mayor. You question whether these ordinances properly give the Town authority to require building permits from any builder, and you state that you do not believe they do.
Ordinance 32A sets forth in Article I, Section 9-2, Finding of Fact, that flood areas are subject to periodic inundation resulting in loss of life and property, health and safety hazards, disruption of commerce and services, and extraordinary expenditures for protection and relief. It further states the flood losses are created by obstructions in flood plains causing increase in flood heights and the occupancy of flood hazard areas because they are inadequately elevated, flood proofed or otherwise protected from flood damage.
A reading of Ordinance 32A indicates its purpose in part is to promote safety and minimize losses due to flood conditions by provisions designed to help maintain a stable tax base by providing for the sound use and development of flood-prone areas, and insure potential buyers are notified that property is in a flood area. One method provided to accomplish its purposes is to restrict or prohibit uses that are dangerous to health, safety or property in times of floods.
Article II, Definitions, includes "Development" and states it means "any man-made change in improved and unimproved real estate, including but not limited to building or other structures". Section 9-7, Establishment of Development Permit, provides, "A development Permit shall be required to ensure conformance with the provisions of this ordinance"; and Section 9-8, Compliance, then states, "No structure or land shall be located, altered or have its use change without full compliance with the terms of this ordinance and other applicable regulations." Section 9-14, Permit Procedures, covers applications for a Development Permit, on furnished forms to be presented to the Floodplain Administrator, setting forth the required information which include in part submission of plans to scale showing locations, dimensions and elevation of proposed landscape alterations, existing structures, and location in relation to flood areas.
Ordinance 32A-1 amends Ordinance 32A in some aspects but does not change the intent of the prior ordinance or requirements.
We find Article IV, Administration, Section 9-12 especially pertinent to your inquiry wherein it provides as follows:
 The Mayor is hereby appointed the Floodplain Administrator to administer and implement the provisions of this ordinance and other appropriate sections of 44 C.F.R. (National Flood Insurance Program Regulations) pertaining to flood plain management.
Section 9-13, Duties and responsibilities of the Floodplain Administrator, lists his duties, although stating it is not to be limited to that list, and it is provided therein in Subsection (3) "Review, approve or deny all applications for development permits required by adoption of this ordinance"; and Subsection (4) "Review permits for proposed development to assure that all necessary permits have been obtained from those Federal, State or local government agencies (including Section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1334) from which prior approval is required."
It appears from these cited provisions and reading the ordinances as a whole that a building permit is in compliance with the purposes and requirements set forth therein for development as defined to mean "any man-made change in improved or unimproved real estate", and application for the permit requires a plan in duplicate and "location in relation to flood areas".
Therefore, it would seem without requiring application of the provisions to all building permits there would be no way to insure enforcement of the provisions of the ordinance to determine what plans are "in relation to flood areas". Accordingly, the purpose of the ordinance would be defeated if not applied to all builders, and we disagree with your conclusion that the ordinances do not give the town authority to require building permits of any builders.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________ BARBARA B. RUTLEDGE Assistant Attorney General
RBI/bbr
DATE RELEASED: January 22, 2003